**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STEVIE LYNN DAVIS, ID # 1372520,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:08-CV-00715-B-BH** |
| | ) | |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the Court, this case has been

referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I.  BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), filed a petition for habeas corpus relief pursuant to

28 U.S.C. § 2254 to challenge his Kaufman County conviction for intoxicated manslaughter with

a deadly weapon (Cause No. 21890).  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A.  Factual and Procedural History**

On or about May 4, 2002, petitioner was involved in a single-vehicle accident during which

his truck flipped and killed his seven-year-old nephew.  *Davis v. State*, No. 05-06-00969-CR, 2007

WL 2325526, at *1-2 (Tex. App. – Dallas Aug. 13, 2007, no pet.) (appellate decision setting out

factual background).  On October 29, 2003, the State indicted him for intoxication manslaughter.

Clerk's Record (CR) at 3.

At trial, the State presented testimony from three children who survived the accident (peti-

tioner's two daughters and a nephew), petitioner's ex-wife, a sixteen-year veteran Trooper of the

Texas Department of Public Safety (DPS), a DPS scientist, and a registered nurse. *Davis*, 2007 WL 2325526, at *1-2; *accord* Rep.'s R., Vols. 3and 4 [hereinafter cited as RR-volume # at page]. The ex-wife, who was married to petitioner at the time of the accident, testified that he began drinking at 6:00 a.m. the day of the accident and left home three hours later with his sister, the mother of the two boys in the accident. They returned at 4:30 p.m.; the sister went home and the ex-wife left for an errand around 5:00 p.m . During the fifteen to twenty minutes that the ex-wife was gone, petitioner and the four children left in his truck. RR-4 at 157-60. She was concerned because petitioner had been drinking and the truck lacked seat belts. *Id.* at 160.

The children testified that petitioner was driving, his then twelve-year-old daughter was sitting in the front passenger seat, and the other children were in the back when they left. *Id.* at 177-208. Just before the accident, the nephew moved to the front seat. The truck spun out on some loose gravel, a back tire blew out as petitioner tried to regain control, and the truck flipped. Petitioner and the nephew were entirely ejected from the truck. *Id.* The daughter and another nephew testified that petitioner had been drinking before the accident. *Id.* at 193-94, 204.

When the DPS Trooper arrived at the scene he found open beer cans, the truck on its side, a dead boy, an injured girl, and an unconscious man. RR-3 at 66-75. He learned from the daughter that petitioner had lost control of the truck after it had gone off the road. *Id.* at 70. He testified that there was a strong odor of alcohol at the scene and coming from petitioner. *Id.* at 73-74, 90-92. As petitioner and the children were taken to the hospital, the Trooper photographed the scene and marked where petitioner apparently lost control, where he tried to regain control, where the tire blew, and where the truck finally stopped. *Id.* at 75-76, 120-22. He analyzed the data and concluded that petitioner ran off the road and overcorrected. *Id.* at 84. One week later, while investigating

2

whether the condition of the truck played a role in the accident, he found only one working seat belt, a broken shock, and front tires of different sizes.[1]  *Id.* 122-26.  During his interview, petitioner alleg-edly remembered nothing about the accident and stated that he had only drank one beer on that day.[2]  *Id.* at 184; RR-4 at 45.  The Trooper testified that based on his observations, accident reconstruction, and investigation, petitioner's intoxication caused the accident, and that neither speed nor the con-dition of the truck were factors.  RR-3 at 88-89, 128, 189; RR-4 at 40.  He conceded that many other possibilities could have caused the accident, but he opined that petitioner's intoxication was the cause.  RR-3 at 143, 155, 161, 167-68; RR-4 at 40.

A registered nurse testified that she withdrew petitioner's blood at Parkland Hospital at the request of the DPS Trooper.  RR-3 at 192, 194-95.  She "prepped his left ankle with Betadine solu-tion" and withdrew the blood with "a butterfly catheter attached to a ten cc syringe".  *Id.* at 195.

The DPS scientist testified that a toxicology report showed that petitioner had a blood alcohol content of .18 approximately two and a half hours after the accident.  RR-4 at 117-18.  In order for petitioner to have been within the legal limit at the time of the accident, he would have had to have consumed "a large amount of alcohol" just prior to the accident.  *Id.* at 131.

Petitioner called as defense witnesses a bystander who provided assistance at the scene and his sister.  *See id.* at 209, 224.  The bystander testified that when the truck passed him, the daughter was driving and petitioner seemed to be passed out in the passenger seat.  *Id.* at 211-12.  He confirmed the smell of alcohol.  *Id.* at 216-17, 220.  The daughter had told him that one of the boys tried to climb into the front of the truck, and they hit some rocks and lost control.  *Id.* at 214-15.  The

---

[1]  At some point, the truck became unavailable for anyone to inspect.

[2]  Although the Trooper gave a video tape of the interview to the prosecutor, the tape was not provided to petitioner and the prosecutor did not have it at trial.  *See* RR-3 at 186.

sister testified that petitioner did not seem intoxicated when she left for home at 5:00 p.m., and she did not believe he was intoxicated at the time of the accident. *Id.* at 225, 231-32.

On April 13, 2006, a jury found petitioner guilty of the charged offense and found that he used a deadly weapon – the truck – during its commission. *See* RR-5 at 70. On April 19, 2006, he was sentenced to thirty-five years' imprisonment. CR at 263.

On direct appeal, the court of appeals affirmed the conviction and found sufficient evidence to support the conviction and the deadly weapon finding. *Davis*, 2007 WL 2325526, at *4-6. On March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus without written order. *Ex parte Davis*, No. 69,378-16, unpub. op. at 1 (Tex. Crim. App. Mar. 12, 2008).

## B. Substantive Claims

On April 23, 2008, petitioner filed a petition for federal habeas relief with an attached memorandum. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9; Mem. at 1-27.) He asserts that (1) the State illegally took a blood specimen from him, (2) there is insufficient evidence to support the deadly weapon finding, and (3) his due process rights were violated. (Pet. at 7; Mem. at 1-27.) In June 2008, respondent provided relevant state-court records and filed an answer in which he contends that petitioner's claims fail on the merits. (*See* Resp.'s Original Answer (Answer) at 5-14.)

## II. APPLICABLE LAW

Congress enacted AEDPA on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies in this case.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unrea-
>> sonable application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determin-
>> ation of the facts in light of the evidence presented in the State court
>> proceeding.

No one disputes the applicability of these AEDPA standards to petitioner's claims.

The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption "applies to explicit findings of fact and to 'those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

### III.  ILLEGAL BLOOD WITHDRAWAL

Petitioner contends that the State violated Texas Transportation Code § 724.012 when it took a blood specimen while he was unconscious and prior to his arrest.  (Pet. at 7; Mem. at 1-2, 5-13.) Respondent argues that a violation of state law provides no basis for federal habeas relief, and that petitioner is still entitled to no relief even if the claim is considered as arising under the Fourth Amendment.[3]  (Answer at 7-9.)

---

[3]  Although a violation of state law is not cognizable on federal habeas review, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court addresses the merits because the alleged violations relate to one of petitioner's due process claims.

A.  **Violation of Implied Consent Procedure**

Texas has legislated that motor vehicle operators have impliedly consented to submit breath

or blood for analysis in certain circumstances.  Tex. Transp. Code § 724.011 (Vernon 1999).[4]  Upon

request from a peace officer who reasonably believes that a person has operated a motor vehicle in

a public place while intoxicated, a blood specimen "may be taken" from that person if he or she has

been arrested and has not withdrawn consent.  *See id.* §§ 724.012(a), 724.013.  If a person who has

been arrested for an offense under Chapter 49 of the Texas Penal Code involving the operation of

a motor vehicle[5] refuses to voluntarily submit a blood specimen, and the officer reasonably believes

that the offense resulted in an accident and that a person has died or will die as a direct result of the

accident, the "officer shall require the taking of a specimen of the person's breath or blood."  *Id.* §

721.012(b).  Although § 721.012(b) is the sole exception to taking a specimen when a person has

refused to voluntarily submit a specimen, the implied consent of § 724.011 remains in effect for

persons who are "dead, unconscious, or otherwise incapable of refusal".  *See id.* §§ 724.013,

724.014(a).

In this case, trial testimony indicates that petitioner was unconscious and under arrest when

a blood specimen was taken.  *See* RR-3 at 134-35 (testimony of DPS Trooper).  Even if petitioner

was released after the withdrawal of blood and later re-arrested, he was still under arrest at the time

---

[4]  Section 724.011(a) specifically provides:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the per-
> son was operating a motor vehicle in a public place . . . while intoxicated . . . the person is deemed to
> have consented, subject to this chapter, to submit to the taking of one or more specimens of the
> person's breath or blood for analysis to determine the alcohol concentration or the presence in the
> person's body of a controlled substance, drug, dangerous drug, or other substance.

[5]  Chapter 49 includes petitioner's offense.  *See* Tex. Penal Code. 49.08(a) (Vernon 2003) (providing that a person
commits intoxication manslaughter under Texas law if he or she operates a motor vehicle while intoxicated and causes
the death of another by accident or mistake).

the officer obtained the blood specimen.[6]  *See Williams v. State*, No. 05-03-00787-CR, 2004 WL

434622, at *3 (Tex. App. – Dallas Mar. 10, 2004, no pet.).  Given that petitioner was unconscious,

§ 724.012(b) was inapplicable and did not permit the taking of his blood.  Nevertheless, §

724.012(a) permitted the blood draw because petitioner's implied consent remained in effect under

§ 724.014.  For these reasons, the Court finds that petitioner's blood was not taken in violation of

§ 724.012.  This aspect of his claim entitles him to no habeas relief.

**B.  <u>Fourth Amendment</u>**

To the extent petitioner's first claim should be construed as an alleged violation of the Fourth

Amendment, *Stone v. Powell*, 428 U.S. 465 (1976) bars federal habeas review.  This Court cannot

grant federal habeas relief on Fourth Amendment claims when "the State has provided an oppor-

tunity for full and fair litigation" of them.  *See Stone*, 428 U.S. at 494.  When "a state provides the

processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim", it

provides the necessary opportunity "whether or not the defendant employs those processes." *Caver*

*v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *accord Janecka v. Cockrell*, 301 F.3d 316, 320

(5th Cir. 2002).  Because Texas provides the processes whereby petitioner could have obtained full

and fair litigation of the alleged illegal search and seizure, *Stone* bars this Court's consideration of

the claim on habeas review.

In addition, petitioner's Fourth Amendment claim fails on its merits.  Although withdrawing

a blood sample constitutes a search within the meaning of the Fourth Amendment, that Amendment

only prohibits unreasonable searches.  *United States v. Bullock*, 71 F.3d 171, 176-77 (5th Cir. 1995).

To determine whether such a search is reasonable, the courts balance three factors set out in

---

[6] Petitioner contends that he was not arrested until November 18, 2002.  The DPS Trooper specifically testified that he was under arrest at the hospital.

*Schmerber v. California*, 384 U.S. 757 (1966):  (1) the extent to which the procedure may threaten

the health or safety of the individual; (2) the extent of the extent of the intrusion upon the indi-

vidual's interest in personal privacy and bodily integrity; and (3) the community's interest in

accurately and fairly determining the individual's guilt or innocence.  *See Bullock*, 71 F.3d at 176.

In this case, at the request of the DPS Trooper, a registered nurse withdrew petitioner's blood

while he was hospitalized in a sanitary place.  RR-3 at 192, 194-97.  The record shows that the

specimen was taken in accordance with Tex. Transp. Code § 724.017.[7]  Petitioner does not contend

that the nurse used an improper technique.  Under the circumstances of this case, the first factor

weighs in favor of finding no Fourth Amendment violation.  *See Bullock*, 71 F.3d at 176.

With respect to the second factor, "taking blood samples is virtually risk and pain free when

properly performed."  *See id.*  Petitioner here has presented no basis for finding that the method of

withdrawal was not in conformance with accepted medical practice or that he was exposed to

unacceptable risk or pain.  In such circumstances, the second factor weighs in favor of finding the

search reasonable.  *See id.*

As for the third factor, the community has an undeniable interest in determining an indi-

vidual's criminal responsibility.  *See id.* at 176-77.  The Trooper smelled alcohol at the scene and

from petitioner, observed open beer cans at the scene, and was informed that petitioner had been

drinking before the accident.  Despite those signs of potential intoxication, the Trooper was unable

to perform typical road-side tests for intoxication because petitioner was unconscious.  *See* RR-3

---

[7] In its implied consent statute, Texas has set out guidelines for taking blood for purposes of determining intoxication under Chapter 724 of the Texas Transportation Code.  *See* Tex. Transp. Code § 724.017 (Vernon 1999).  That section provides:  "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.  The blood specimen must be taken in a sanitary place."

at 153-54; RR-4 at 50-51.  Accordingly, the State had a great need for the scientific evidence from

a blood sample.  This factor weighs in favor of finding no Fourth Amendment violation.

As in *Bullock*, the relatively minor risk and intrusion from the blood withdrawal was offset

by the need for the evidence, petitioner is entitled to no federal habeas relief even if his claim is

construed as asserting a Fourth Amendment violation.

## IV.  SUFFICIENCY OF THE EVIDENCE

In his second claim, petitioner contends that there is insufficient evidence to support the

deadly weapon finding.  (Pet. at 7; Mem. at 14-16.)

Federal courts have extremely limited habeas review of claims based on the sufficiency of

the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443

U.S. 307 (1979).  Under *Jackson*, reviewing courts view the evidence in the light most favorable to

the prosecution to determine whether "any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  The courts review all the evi-

dence before the trier of fact, including erroneously admitted evidence.  *United States v. Miller*, 146

F.3d 274, 280 (5th Cir. 1998).  Review does not generally include assessing the credibility of

witnesses.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Furthermore, the evidence need not exclude

every reasonable hypothesis of innocence nor be wholly inconsistent with every conclusion except

those that support the verdict.  *United States v. Salazar*, 958 F.2d 1285, 1294 (5th Cir. 1992).

Federal courts apply the *Jackson* "standard looking to the state's substantive law, giving great

weight to the state court's determination."  *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000).

State case law and statutes bind the courts in their determination of the elements needed to be

proven.  *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992).

Here, petitioner only challenges the legal sufficiency of the evidence to support a deadly weapon finding. In Texas, a deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon 2003). Evidence is legally sufficient to sustain a deadly weapon finding when (1) the object qualifies as a dangerous weapon within the meaning of § 1.07(a)(17); (2) the defendant used or exhibited the object during the events which led to the felony conviction; and (3) others were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc). Texas courts have interpreted "deadly weapon" to include "anything, including a motor vehicle, which is actually used to cause the death of a human being is a deadly weapon." *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (en banc). When a motor vehicle accident caused by intoxication results in someone's death, the vehicle is "undoubtedly a deadly weapon" under Texas law. *Id.*

Viewed in a light most favorable to the prosecution, the evidence in this case showed that at the time of the accident, petitioner was driving the vehicle while intoxicated; his intoxication caused the accident; and others were injured or killed as a result of the accident. Driving a vehicle while legally intoxicated equates to using the vehicle in a manner capable of causing death or serious bodily injury. The State presented evidence sufficient to establish the essential elements necessary for a deadly weapon finding, and this claim entitles petitioner to no relief.

## V. DUE PROCESS

Petitioner's third claim alleges several violations of due process: (1) violation of his right to a speedy trial; (2) the prosecutor avoiding the issues and discrediting defense counsel prior to trial; (3) the trial court stating that counsel could have brought a speedy trial motion at any time; (4)

the prosecution declining to entertain a plea bargain; (5) the trial court denying a requested

continuance for newly retained counsel to prepare for trial; (6) prosecutor tampering with witnesses;

(7) admission of evidence at trial (testimony regarding blood sample) and at sentencing (pen

packets);[8] (8) the trial court's rulings regarding a motion hearing; and (9) suppression of exculpatory

evidence (truck and taped interview) in violation of *Brady*.[9]   (Mem. at 17-26.)   Because the petition

focuses on the alleged *Brady* violation, the Court addresses this claim first.

## A. *Brady*

Petitioner claims the State suppressed the truck involved in the accident and an audio/video

tape of his interview with the DPS Trooper.  (Mem. at 2, 24.)

In accordance with *Brady*, a prosecutor must disclose evidence to a criminal defendant if that

evidence is favorable to the defendant and material to his guilt or punishment.   373 U.S. at 87.

"*Brady* claims involve 'the discovery, after trial of information which had been known to the

prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).

A "true *Brady* violation" has three components:  (1) evidence favorable to the accused either because

it is exculpatory or impeaching; (2) willful or inadvertent suppression of that evidence by the State;

and (3) resulting prejudice to the accused.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Evidence is material within the meaning of *Brady* only when there is a reasonable probability

of a different result at trial had the evidence been disclosed.  *Wood v. Bartholomew*, 516 U.S. 1, 5

(1995).

> The question is not whether the defendant would more likely than not have received
> a different verdict with the evidence, but whether in its absence he received a fair

---

[8] A "pen packet" is the penitentiary file for the defendant that contains the record of the inmate's prior convictions.

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

trial, understood as a trial resulting in a verdict of confidence.  A "reasonable prob-
ability" of a different result is accordingly shown when the government's evidentiary
suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678

(1985)).  In other words, there must be "a 'significant possibility' of a different result to characterize

the *Brady* materiality standard."  *Strickler*, 527 U.S. at 300 (Souter, J., concurring).

In this case, because the taped interview and vehicle appear to have been known to the

defense prior to trial, the State's failure to specifically provide the items to petitioner does not

implicate *Brady*.  In any event, petitioner has shown no reasonable probability of a different outcome

at trial had he been given access to the two items.  Although he asserts that the tape would show that

the Trooper had concluded that the accident was caused by circumstances other than intoxication

(Mem. at 24), he provides no basis for such conclusory assertion.  Even without the tape, it would

have been a simple matter to ask the Trooper at trial about his prior conclusion.  Petitioner likewise

provides no basis for finding that the unavailability of the truck altered the trial result.  The jury

heard testimony regarding the condition of the truck.

Because petitioner has not shown that the unavailability of the truck or tape at trial

undermines confidence in the verdict, his *Brady* claim fails for lack of prejudice.

**B.  Speedy Trial**

Petitioner also complains that the delay between his arrest on November 18, 2002,[10] and his

indictment on October 29, 2003, violates his due process rights to a speedy trial.  (Mem. at 3, 17.)

The Sixth Amendment affords criminal defendants "the right to a speedy and public trial."

U.S. Const. amend. VI.  The right is triggered upon arrest or formal accusation, *United States v.*

---

[10]  This is the date on which petitioner alleges he was arrested.

*McDonald*, 456 U.S. 1, 6-7 (1982), not by pre-accusation delays, *United States v. Marion*, 404 U.S.

307, 323 (1971).  However, a defendant's due process rights play a "limited role . . . in protecting

against oppressive delay" prior to formal accusation by arrest or indictment.  *United States v.*

*Lovasco*, 431 U.S. 783, 788-89 (1977).

When facing such a due process claim, the courts "consider the reasons for the delay as well

as the prejudice to the accused."  *Id.* at 790.  To constitute a due process violation under this

Supreme Court precedent, petitioner must show that the delay caused actual and "substantial

prejudice to [the accused's] rights to a fair trial and that the delay was an intentional device to gain

tactical advantage over the accused."  *Marion*, 404 U.S. at 324; *accord United States v. Crouch*, 84

F.3d 1497, 1510 (5th Cir. 1996) (en banc).

Although petitioner in this case alleges that he has been prejudiced by the pre-accusation

delay, he has not affirmatively shown prejudice.  He has not shown how the alleged eleven-month

delay prejudiced him.  He complains that the truck involved in the accident "disappeared" but does

not show that the pre-accusation delay caused such disappearance.  (Mem. at 3, 17, 24.)  Also, as

discussed in the prior section, he has not shown that access to the vehicle would have made a

difference at trial.  This claim fails for lack of prejudice.[11]

## C.  Admissibility Rulings

Petitioner claims that the trial court erred in admitting testimony regarding his blood alcohol

content at trial and pen packets at sentencing (Exhibits P-1 and P-2).

Trial court rulings are matters of state law which are not subject to re-examination by the

federal courts.  It is not "the province of a federal habeas court to reexamine state-court deter-

---

[11] To the extent petitioner attempts to show prejudice based on the lost taped interview with the Trooper, he fails to show prejudice for the same reasons.

minations on state-law questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may grant habeas relief based on an

erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitu-

tional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d

440, 446 (5th Cir. 1997).

With respect to the admission of evidence regarding petitioner's blood alcohol content, there

is no error in its admission.  As already discussed, the blood sample was not taken in violation of

the Fourth Amendment or the Texas implied consent statute.  The testimony of the DPS Trooper

provides a reasonable basis to admit the evidence under Texas law.  *Cf. Gray v. State*, No. 13-02-

00367-CR, 2008 WL 5751952, at *2 (Tex. App. – Corpus Christi Nov. 25, 2008, pet. dismissed)

(finding no error in the admission of similar evidence when there was testimony that the defendant

consented to the blood draw).

As for the admission of the pen packets, petitioner has also not shown that the trial court

erred in admitting them for sentencing purposes.  He complains that the pen packets lacked suf-

ficiency in the following respects:  (1) substandard quality of fingerprints; (2) no legal certification

or signature; (3) no judge's signature; and (4) no indictment to prove existence of charges.  (Mem.

at 1.)  Under Texas law, however, "pen packets are admissible to show a defendant's prior criminal

record provided they are properly authenticated as set forth in Texas Rule of Evidence 902." *Cuddy*

*v. State*, 107 S.W.3d 92, 96 (Tex. App. – Texarkana 2003, no pet.) (citing *Reed v. State*, 811 S.W.2d

582, 586 (Tex. Crim. App. 1991); Tex. R.  Evid. 902).  Because Exhibits P-1 and P-2 were certified

by the record clerk of the Texas Department of Criminal Justice – Institutional Division, they were

properly authenticated under Rule 902. *See id.* Furthermore, although the copies of the pen packets

are not of the best quality, they contain certified copies of the judgments and sentences for peti-

tioner's prior convictions. *See* RR-7 (Exs. P-1 and P-2).

Petitioner primarily complains about the adequacy of the fingerprints to connect him to the

prior convictions. However, under Texas law, deficiencies related to the prints would not render the

entire pen packet inadmissible; such deficiencies go to the weight of the evidence, not admissibility.

*Pachecano v. State*, 881 S.W.2d 537, 545 (Tex. App. – Fort Worth 1994) (citing *Robinson v. State*,

739 S.W.2d 795, 802 (Tex. Crim. App. 1987)). Petitioner's attorney rigorously cross-examined the

fingerprint expert regarding the quality of prints and his level of certainty that the prints matched

petitioner's prints. *See* RR-6 at 14-32, 39-40, 46-48.

There is no error in the admission of the pen packets or evidence of petitioner's blood alco-

hol content. In the absence of an admissibility error, there is no due process violation based on their

admission at trial.

### D. **Generic Due Process Violations**

Petitioner asserts various other generic violations of due process by the trial court and the

prosecution. (Mem. at 17-26.)

Generic violations of due process require federal habeas courts to determine whether the

alleged conduct rendered petitioner's trial or sentencing fundamentally unfair. *Payne v. Tennessee*,

501 U.S. 808, 831 (O'Connor, J., concurring) (sentencing errors); *Darden v. Wainwright*, 477 U.S.

168, 181 (1986) (prosecutorial misconduct); *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997)

(trial court error). A proceeding is fundamentally unfair if there is a reasonable probability that its

outcome might have been different had the proceeding been properly conducted. *Foy v. Donnelly*,

959 F.2d 1307, 1317 (5th Cir. 1992).[12]

Petitioner's remaining alleged due process violations also do not warrant relief. Petitioner

has presented nothing to show that any tampering actually occurred. To the extent the testimony

of the witnesses differed from statements initially made, the differences were pursued through cross-

examination. Petitioner has shown no reasonable probability that these violations might have made

a difference to the outcome at trial or that his trial or sentencing proceedings were rendered

fundamentally unfair by any of the alleged due process violations.

## VI.  STATE CONSIDERATION OF CLAIMS

No one disputes that the state courts adjudicated petitioner's claims on the merits through

the state appellate or habeas processes. The decisions to deny relief at the state level are consistent

with applicable Supreme Court precedent. The decisions involved no unreasonable application of

Supreme Court precedent. The adjudication of the claims did not result in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented to the state courts.

Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no

habeas relief on the claims raised in the instant petition.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected

in the state-court records, an evidentiary hearing appears unnecessary.

---

[12] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

## VIII.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 26th day of June, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE